SECURITY TRUST & SAVINGS BANK OF CHARLES CITY, Appellee, v. GILBERT C. GALLUP et al., Appellants.

APPEAL AND ERROR: Notice—Nonappealing Judgment Defendant
1  Who Has Assumed Debt. In real estate foreclosure proceedings wherein judgment is rendered against the original debtor owner and against successive grantees of the land who had assumed the payment of the mortgage debt, an appeal by the original debtor and by the last assuming owner necessitates service of notice of appeal on all prior nonappealing judgment defendants.

APPEAL AND ERROR: Notice—Waiver or Voluntary Appearance—
3  interest of Party. Ordinarily, the question whether a nonappellant himself to the jurisdiction of the appellate court either (1) by a waiver of notice of appeal or (2) by voluntary appearance.

APPEAL AND ERROR: Notice—Extraneous Matter Bearing on Non-
2  Effect. Principle reaffirmed that a nonappellant may not submit is a necessary party to an appeal, and therefore entitled to notice of appeal, must be decided *upon the record upon which the appeal*

*is founded.* If extraneous matter be admissible in any case, it must relate to facts arising *after* the entry of the judgment appealed from.

*Appeal from O'Brien District Court.*—C. C. BRADLEY, Judge.

FEBRUARY 13, 1923.

SUIT in equity, to foreclose a real estate mortgage for $50,000. The defense interposed was an abatement, the claim being that the mortgage was not due. There was a decree for the plaintiff which awarded a joint and several judgment against all the defendants except the two defendants Healey, who were not served with notice of the suit, and who may be disregarded herein. Only the defendants Gilbert C. Gallup and F. O. Kehrberg have appealed.—*Appeal dismissed.*

*T. E. Diamond,* for appellants.

*Thompson, Loth & Lowe,* for appellee.

EVANS, J.—I. The mortgage in suit was a purchase-money mortgage, which was executed by defendants Gilbert C. Gallup and Edith M. Gallup to plaintiff's assignors. It bore date October 4, 1917, and bore 5½ per cent interest,

1. APPEAL AND ERROR: notice: nonappealing judgment defendant who has assumed debt.

and purported to become due in 10 years from date. The holder of the mortgage elected to accelerate the due date, and to declare the mortgage due forthwith, because of a few days' delay in the payment of an installment of interest. The right of the assignor to so accelerate the due date was the issue presented by plea in abatement. The right of the mortgagee was sustained by the decree of the trial court; and needless to say, the result was a very harsh one. The Gallups, original debtors and mortgagors, resold the land to the two defendants Ten Napels, who assumed the mortgage. Later, the Ten Napels sold the land to the defendant Kehrberg, who also assumed the mortgage. It will be seen, therefore, that these defendants all became personally liable for the debt to the holder of the mortgage. As between the Gallups and the Ten Napels, the latter

became principals and the former became sureties; as between the Ten Napels and Kehrberg, the latter became principal and the former became sureties. The net result was that Kehrberg became primarily liable for the entire debt, as between him and the other defendants, and that the other defendants became liable as sureties, in the order here indicated. In view of a question to be considered later, it is important to note here that these surety defendants were not *cosureties,* except to the extent that the Gallups were cosureties with each other only, and the Ten Napels were cosureties with each other only.

Our first consideration is a motion by the appellee to dismiss the appeal, which motion we ordered to be submitted with the case. The ground of the motion is that only the defendants Kehrberg and Gilbert C. Gallup appealed, and that they served no notice of appeal upon their codefendants, as provided by Code Section 4111. The other defendants neither appealed nor joined in the pending appeal, and they are not before this court in any jurisdictional sense. All the defendants are under the same judgment, so far as the plaintiff is concerned. Their mutual rights and liabilities as between themselves are not identical. The question presented is whether a reversal of the decree in favor of the appealing defendants will affect prejudicially any of the nonappealing defendants. The appellants answer this question in the negative; whereas the appellee answers it in the affirmative.

It is manifest upon the face of the record that a reversal of this case in favor of the appealing defendants alone might affect prejudicially the rights of some of the nonappealing defendants as against the appealing defendants, and particularly as against the defendant Kehrberg. If this be true as to any nonappealing defendant, this would be sufficient to forbid the reversal in favor of the appealing defendants. We shall, therefore, confine our discussion to the effect of a reversal in favor of Kehrberg upon the rights of the nonappealing defendants the Ten Napels. As to the plaintiff, the defendants the Ten Napels are under personal judgment for the full amount of the mortgage debt, and are subject to general execution therefor. This judgment as against them cannot be reversed on this appeal, because these defendants have not appealed nor joined

in the appeal. If the judgment is to stand as entered in the district court, then the Ten Napels, as sureties, are protected *pro tanto* by the lien of the mortgage and by their right to recourse against Kehrberg, in the event that the plaintiff should make collection from them by general execution or otherwise.

On the other hand, a reversal in favor of Kehrberg would set aside the foreclosure of the mortgage and the personal judgment against Kehrberg, and would abate the action as to him, as having been prematurely brought, and such right of abatement would continue until the expiration of 10 years from the date of the mortgage. Such a reversal would not set aside the judgment against the Ten Napels, nor work any abatement in their favor. They would still be liable thereon, and subject to general execution. The plaintiff could collect from them on general execution the full amount thereof. In the event of such collection, the only right which they could exercise as sureties for Kehrberg would be the right of subrogation. They could ask to stand in the shoes of the plaintiff, and to avail themselves of the mortgage lien. But such right of subrogation would be subject to the reversing decree, which would prevent them from enforcing any remedy against Kehrberg until the expiration of the 10-year period; whereas, if the decree were to stand, and the Ten Napels were then compelled to pay the judgment out of their own property, they would become immediately entitled to subrogation, and to collect forthwith upon the mortgaged land and from Kehrberg personally the full amount collected from them. To that extent, the interest of the Ten Napels in the judgment and the affirmance thereof is adverse to the interest of Kehrberg. And this is so, notwithstanding that all the defendants were jointly interested in the full defense of the suit, and that they joined in such defense. The distinctive interest of the sureties in such suit was that they should not be held to a greater liability than their principal. If now, by appeal, the judgment should be reversed as to the principal, and should have to stand as to the nonappealing sureties, such sureties would lose the very rights which were protected by joint defense in the lower court. That it was the duty of the appealing defendants to serve a notice of appeal upon their coparties, in order to confer jurisdiction upon us

over such nonappealing defendants, or to confer authority upon us to enter any decree here in favor of the appellants which would affect prejudicially the nonappealing defendants, is the clear import of the statute and the holding of our previous decisions.   The statute provides:

"Sec. 4111.   A part of several coparties may appeal; but in such case they must serve notice of the appeal upon those not joining therein, and file proof thereof with the clerk of the Supreme Court.

"Sec. 4112.   Coparties, refusing to join in an appeal, cannot afterwards appeal, or derive any benefit therefrom, unless from the necessity of the case, but they shall be held to have joined, and be liable for their proportion of the costs, unless they appear and object thereto."

The foregoing sections have been construed in the following cases as we do herein: *Clayton v. Sievertsen,* 115 Iowa 687, at 689; *Tukey v. Foster,* 158 Iowa 311, at 314; *Dillavou v. Dillavou,* 130 Iowa 405, at 407, 408; *Oskaloosa Sav. Bank v. Miller,* 189 Iowa 393.

II.   In the foregoing division, we have taken no account of a showing of extraneous facts made by appellants in resistance to appellee's motion and in avoidance of the provisions of the statute.   This showing consists of an affidavit by the Ten Napels to the effect, in substance, that, because of a certain indemnifying contract executed by the appealing defendants, the nonappealing defendants are "in no manner interested in said cause or in said appeal," and they are satisfied they will be saved and "held harmless from any claims of whatsoever character by reason of said appeal or by reason of any affirmance, reversal, or modification thereof."   The indemnifying contract is set forth as follows:

2. APPEAL AND
ERROR: notice:
waiver or vol-
untary appear-
ance: effect.

"Agreement.

"Whereas I the undersigned G. C. Gallup have this day exchanged with E. Ten Napel certain notes and

"Whereas the notes that he has turned in to me are secured by a third mortgage on a certain tract of real estate in O'Brien County, Iowa, and

"Whereas the first mortgage on said tract of land is now in litigation and the said E. Ten Napel and H. J. Ten Napel are made parties defendant,— .

"Now, therefore, in consideration of the exchange of the said notes the undersigned hereby agrees to keep the said E. Ten Napel and H. J. Ten Napel whole and that they shall be entirely relieved as between them and the undersigned from any responsibility in the said matter in litigation and from all liability for costs and judgment and all matters pertaining to the said cause of action.

"And I the undersigned F. O. Kehrberg being one of the parties defendant in the matter in litigation and being interested in the outcome of said action, in consideration of the exchange of paper hereinbefore referred to, do hereby join in all the covenants with the said E. and H. J. Ten Napel in this agreement.

"Dated this 9th day of June, 1921.

"[Signed]  G. C. Gallup.
"[Signed]  F. O. Kehrberg."

This indemnifying contract purports to have been made in June, 1921, which was before the entry of the judgment below in this case. The affidavit purports to have been made in December, 1922, which was long after the expiration of the six months wherein an appeal could have been taken. If this extraneous showing could have any legitimate effect, it would be as an attempt either to join in the appeal of the appealing defendants, or to waive notice of appeal and to appear voluntarily in this court. Even if it were permissible at all for these defendants to waive notice of appeal and to enter a voluntary appearance to the appeal taken by others, it would have to be done within the six months permitted by the statute. Appellate jurisdiction could not be conferred after the expiration of six months from the date of the judgments, even by notice. But it is also true that, under the statute, a party cannot confer jurisdiction upon this court by waiver or appearance. Our jurisdiction is appellate, and not original. The method of conferring the appellate jurisdiction is fixed by statute, and requires a written notice both to adverse parties and to the clerk

of the trial court.   This statutory method is exclusive.   *Ash v. Ash*, 90 Iowa 229; *City of Fairfield v. Jefferson County*, 168 Iowa 623.

If, therefore, the extraneous matter set forth herein were meritorious and persuasive, we should be without jurisdiction to adjudicate any question predicated thereon.   We could not adjudicate the indemnifying character of the contract set forth nor extend to the nonappealing defendants any remedy thereunder.   In the event of a reversal, they would stand, notwithstanding this presentation of affidavit and indemnifying contract, in precisely the same position with reference to the judgment appealed from as if they had not presented them at all. In so stating, we have disregarded for the moment the inherent fallacies of the affidavit.

To say that they had no interest in the cause or in the appeal or in the question of affirmance or reversal was a mere legal conclusion, which the affiants doubtless were unable to formulate intelligently.   What avails it to a debtor to make affidavit that he has no interest in a cause upon which judgment has been already entered against him?   The indemnifying contract set forth was executed prior to judgment.   If it can be construed as having added anything to the rights of the Ten Napels not already existing, it was that they should be protected from all liability in that cause.   Necessarily, this would mean that they should be protected against judgment therein.   When the indemnifiers suffered judgment to go against the affiants, their contract was already breached.   The only possible cure of such breach thereafter was to pay the judgment, or else to secure a reversal thereof on appeal in favor of the affiants.   Under the record made on appeal, no such reversal in favor of the affiants is possible.   A reversal in favor of Kehrberg and Gallup alone would not only breach the indemnifying contract again, but it would leave the last state of the affiants worse than their first.   In the event of such a reversal in favor of the appealing defendants alone, the only possible cure for the second breach of the indemnifying contract would be to pay the judgment as entered against the affiants, even though the same judgment had been reversed as against Kehrberg and Gallup.   If, therefore, the appealing defendants would make good their indemnifying

promise to the affiants, they must pay the judgment rendered against the defendants, and this would necessarily render nugatory even a reversal in their favor, if they should obtain one. From any point of view, therefore, we see no substantial merit in the avoidance pleaded by the appellants in their resistance to the motion.

We do not intend to imply by the foregoing discussion that the extraneous matters thus brought to our attention are admissible at all for the purpose of determining the adverse interest of coparties. Ordinarily, such question must

3. APPEAL AND ERROR: notice: extraneous matter bearing on noninterest of party.

be determined upon the record upon which the appeal is founded. If there be any exceptions to this rule, they relate to facts arising *after* the judgment appealed from, and not to extraneous facts existing *before* judgment. *In re Will of Downs,* 141 Iowa 268, 271; *Kenney v. Parks,* 120 Cal. 22 (52 Pac. 40); *Bozeman v. Cale,* (Ind.) 35 N. E. 828; *Smith & Co. v. Hirsch & Co.,* 119 Ga. 514 (46 S. E. 637).

We see no escape from the conclusion that the nonappealing defendants were, in important respects, interested adversely to the appealing defendant Kehrberg, and that they would be prejudicially affected by a reversal in favor of Kehrberg. The failure, therefore, to serve notice of appeal upon the nonappealing defendants, pursuant to Section 4111, stands as a bar to such reversal. We have no occasion, therefore, to go into the larger merits of the appeal. The motion to dismiss the appeal is sustained.—*Appeal dismissed.*

PRESTON, C. J., ARTHUR and FAVILLE, JJ., concur.